428 A.2d 183

COMMONWEALTH of Pennsylvania, Appellant,

v.

Ronald SEIP.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Joseph Alfred DENAULT.

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed April 3, 1981.

Petition for Allowance of Appeal Denied Aug. 6, 1981.

Ronald T. Williamson, Assistant District Attorney, Norristown, for Commonwealth, appellant.

Edward Kane, Norristown, for appellees.

Before PRICE, WATKINS and MONTGOMERY, JJ.

WATKINS, Judge:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Montgomery County which suppressed certain evidence seized by police from defendant Seip's truck. Without this evidence the Commonwealth is unable to proceed with its cases against the defendants.

The defendants had been charged with Burglary, Theft, Criminal Conspiracy, and Receiving Stolen Property. These charges arose out of an incident occurring on June 16, 1979 at which time Patrolman Ritrovato stopped the defendant Seip's vehicle at the Valley Forge Turnpike exit in Upper Merion Township, Pennsylvania, and discovered therein red-colored machinery recently stolen from the Royal Contracting Company. The court below suppressed this evidence holding that the officer did not have probable cause to stop defendant Seip's vehicle.

On June 16, 1979 at 6:47 P.M. the police dispatcher at the Upper Merion Township Police Department received a call from a Larry Perkins, proprietor of the Perkins Garage in the township. His call concerned the presence of a pick-up truck containing a white male and two children in the cab thereof on his property. The truck had been there for an hour. After receiving this information from the dispatcher Officer Ritrovato went to the scene. Upon arriving he observed the defendant Seip in the pick-up truck which had a glass and metal cabin over its loading bed. The cabin contained windows through which one could readily observe the contents thereof. The officer approached Seip who informed him that he was waiting for a Wilson Freight Company driver who was scheduled to show Seip an antique car and that he was accompanied only by the two children. No other person than Seip and the children were observed either in the cab or cabin of the vehicle. The officer also observed that the cabin of the vehicle was essentially empty. After checking Seip's vehicle registration and owner's cards (which were in order), the officer left the scene.

At 8:25 P.M. the dispatcher received a call from a John Schmitz, who keeps a dump truck parked across from Perkin's garage. Schmitz informed the dispatcher that he had seen the pick-up truck travelling down a driveway which leads from the Royal Contracting Company. Seip was driving but another white male inside the cabin was seen attempting to close the door to the cabin. He also saw red colored pieces of machinery inside the cabin of the truck.

This information was relayed to Patrolman Ritrovato who was familiar with the fact that Royal Contracting Company maintains various machinery.

At the turnpike booth Ritrovato, assisted by two other officers, observed the truck stopped at the tollgate. Seip was behind the wheel of the truck accompanied by two children who were in the cab of the truck. While walking around the vehicle, Ritrovato observed machinery in the cabin of the truck on the loading bed. The cabin of the truck was mostly glass and had a glass door on the back and the contents of the loading bed were plainly visible to him. He then raised the cabin window and saw that the machinery consisted of a paint sprayer, an electric welder, a winch, and a portable pump. He also saw a quilted blanket which was rising and falling as if someone were underneath the blanket breathing. The officer then ordered the person underneath the blanket to come out from under it whereupon the defendant DeNault exited the cabin of the truck and informed Ritrovato that he was a former employee of Royal Contracting Company and had permission to use the equipment which was in the truck. The defendants were then taken to the police station. The owner of Royal Contracting Company was contacted to check out DeNault's story after which both defendants were charged with the abovementioned offenses.

The sole issue is whether the officer had probable cause to make the investigating stop at the tollgate booth.

Because of its mobility an automobile may be searched without the aid of a search warrant, if there is probable cause to believe that the automobile contains articles subject to seizure. *Commonwealth v. Ramsey*, 259 Pa.Super. 240, 393 A.2d 806 (1978). In order to justify a warrantless search of a vehicle, the police officer must have independent probable cause to believe that a felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is concealed within the vehicle or that there are

weapons which are accessible to the occupants. *Commonwealth v. Lewis*, 442 Pa. 98, 275 A.2d 51 (1971). However, where the police have a lawful right to be in the position they are when they made an observation, they can lawfully seize objects which are in plain view. *Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978).

In the instant case the police officer had a right to be in the position that he was when he observed the machinery in Seip's vehicle. At that time he was standing on a public highway where Seip's truck had stopped. The testimony revealed that the cabin of Seip's vehicle was in large part composed of glass, through which passersby easily could peer. Thus, Ritrovato's observations of the machinery in the truck was the observation by an officer of an object in "plain view". The question is whether sufficient probable cause existed to permit him to open the door of the vehicle thereby revealing DeNault under the blanket.

Police may rely upon information which is broadcast over the police radio in order to justify an initial stop of an automobile suspected of having been involved in criminal activity. *Commonwealth v. Benson*, 239 Pa.Super. 100, 361 A.2d 695 (1976). The question, therefore, is whether all of the facts known to the officer at the time he talked to Seip at the tollgate entrance were sufficient to constitute probable cause to open the window of the cabin and detain the defendants for questioning. The court below ruled that they were not. In its opinion the court indicated that the officer acted upon "suspicion or 'police instinct'" but had "no basis in fact to believe that any burglary or any crime had been committed." The court below held that this was so because the officer had not seen Seip or DeNault enter or leave Royal nor did he have any information to the effect that they had entered or left the victim's plant. What the officer did know was that Seip had been parked on a private lot with his truck near Royal Contracting. He knew that Seip was accompanied by two children and had been informed by Seip that no one else was with him. He also had observed that the glass-enclosed load bed of Seip's truck was

empty at 6:47 P.M. on June 16, 1979 and had been informed by Seip that he was at the location because he was waiting to be shown an antique car. The officer also knew that Royal Contracting Company maintained various types of machinery although he had never been inside the plant. Ritrovato was then informed at 8:25 that the same pick-up truck had just come down the roadway from Royal Contracting Company. On cross-examination the officer related that Royal Contracting Company was the only place from where the truck could be coming based upon the description of the location of the truck given him over the police radio. When he observed the truck a few minutes later at the tollgate booth he could see through the glass-enclosed load bed that the truck now contained machinery. He had also been informed by the dispatcher that at the time Seip was driving the vehicle away from Royal Contracting Company he was accompanied by another white male who was attempting to close the door of the truck cabin and that machinery was now present on the vehicle's load bed. We hold that the above-mentioned facts were sufficient to establish sufficient probable cause for the police to stop the vehicle at the tollgate to further question the driver of the vehicle. The most important facts of which the officer was aware were that he had personally observed the empty load bed of the truck less than two hours before he had been informed that the truck now contained machinery; that the truck's driver had informed the officer that his purpose in being parked on the private lot was to be shown an antique car which purpose was inconsistent with the presence of machinery in the truck less than two hours later; that he knew that the business of Royal Contracting was maintaining machinery; that the vehicle was observed driving down the roadway leading from Royal Contracting; and that another adult male was now in the truck whereas Seip had informed him that he was alone with the two children. We hold that these facts were sufficient to enable the officer to stop Seip's vehicle for further questioning of Seip relative to these circumstances and that the officer's further observations of the machinery in the truck, which was in "plain view", when

taken in conjunction with the above facts, provided the officer with sufficient cause to open the window of the truck's cabin thereby revealing DeNault hiding under the blanket. From these facts the officer could reasonably believe that Seip had lied to him previously about his purpose in being parked in the private lot and that Seip and/or DeNault had removed the machinery from Royal Contracting without the permission of the owner. While said facts may not have provided the officer with sufficient cause to arrest either defendant, they did provide him with sufficient facts to detain the defendants temporarily in order to check out DeNault's story about having been given permission to remove the machinery from Royal Contracting. The Fourth Amendment of the United States Constitution does not require a policeman who lacks the precise level of knowledge necessary for probable cause to make an arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Commonwealth v. Galadyna*, 248 Pa.Super. 226, 375 A.2d 69 (1977). In the instant case Officer Ritrovato's actions at each step of his investigation were consistent with the protection of defendants' Fourth Amendment rights, as well as with good police work. He did not suddenly stop Seip's vehicle and ransack it looking for evidence of a possible crime but carefully questioned Seip about his previous answers which were inconsistent with the officer's knowledge and observations. At each step of the investigation the officer obtained more personal knowledge of the situation which strengthened his probable cause to believe that a felony, (theft, burglary or conspiracy) had been committed by the defendants and that the pick-up truck had been employed in committing the offense (removing the machinery from its lawful owner). Thus, we hold that the evidence should not have been suppressed as the officer's investigatory stop of the vehicle was not based upon mere instinct or suspicion but was based upon definite articulated facts which gave him sufficient cause to do what he did. The evidence should not have been suppressed.

Order reversed and remanded to the court below for further proceeding in accordance with this opinion.