431 A.2d 329

**COMMONWEALTH of Pennsylvania**

v.

**David P. VENEN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1981.

Filed June 19, 1981.

144

David P. Venen, Avella, appellant, in pro. per.

Herman Bigi, District Attorney, Washington, submitted a brief on behalf of Commonwealth, appellee.

Before BROSKY, DiSALLE and SHERTZ, JJ.

BROSKY, Judge:

Appellant was charged with five (5) summary offenses, all involving the overtime parking violations in Washington, Pennsylvania.[1] All the violations occurred during 1979 and 1980. Venen admits that he was guilty of all offenses, but contends that he is prevented from paying the fines assessed against him because of the Act of Congress, June 5, 1933.[2]

The Act provides:

1. Venen represents himself pro se before this court.

2. 31 U.S.C.A. § 463.

Joint resolution to assure uniform value to the coins and currencies of the United States.

Whereas the holding of or dealing in gold affect the public interest, and are therefore subject to proper regulation and restriction; and

Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount in money of the United States measured thereby, obstruct the power of the Congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts. Now, therefore, be it

Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money

of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations. SEC. 2. The last sentence of paragraph (1) of subsection (b) of section 43 of the Act entitled "An Act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint-stock land banks, and for other purposes", approved May 12, 1933, is amended to read as follows:

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues, except that gold coins, when below the standard weight and limit of tolerance provided by law for the single piece, shall be legal tender only at valuation in proportion to their actual weight." Approved, June 5, 1933, 4.40 p. m.[3]

Venen argues that this statute must be read in light of the Act of the General Assembly of March 12, 1842 which states:

Hereafter no medium shall be received in the payment of tolls, taxes or other revenue of the commonwealth, other than gold and silver, the notes of specie-paying banks.[4]

The appellant reasons that the Act of March 12, 1842 prohibits the payment of any debts to the Commonwealth excepting those made in gold, silver or "the notes of specie-paying banks." He then contends that the Act of June 5, 1933 prohibits payment in gold or silver. And, then he

---

**3.** This Act is entirely inapplicable to the transactions disputed by the parties. Congress decided by the Act of October 28, 1977, 91 Stat. 1229 that the Joint Resolution of June 5, 1933 was not to be applied to any transaction which had its genesis after October 28, 1977.

**4.** 72 P.S. § 3301.

argues the Congress has made no declaration of what are the "notes of specie-paying banks." Thus, despite his willingness to pay his debt to the City of Washington, he is left with no legal tender in which he can pay.

While we appreciate the extensive research entered into by the appellant, remain impressed with the legal memorandum he presents us and value the argument he made to us, we are unpersuaded of appellant's position.

In *Guaranty Trust Co. v. Henwood*, 307 U.S. 247, 59 S.Ct. 847, 83 L.Ed. 1266 (1938), the United States Supreme Court discussed the purpose of the Act of June 5, 1933. The court stated:

> In the bankruptcy reorganization of the St. Louis Southwestern Railway Company, a Missouri Corporation, petitioners filed claims for bondholders. They asserted a right under the bonds to be paid in Dutch guilders, and asked that their claims—based upon guilder value—be allowed for $37,335,525.12. The trustee in bankruptcy contended, and the courts below held that the Joint Resolution of June 5, 1933, made the bonds dischargeable by payment of current legal tender United States money, and petitioners' claims were accordingly allowed for $21,638,-000.00, the face amount of their bonds in dollars.

> These bonds, secured by a trust mortgage, were issued and sold in the United States in 1912. Purchasers paid and the railroad received United States dollars, and until 1936 interest was regularly paid in dollars.

> The asserted right to guilder payment rests upon a provision of the bonds concededly granting holders an option to elect payment in dollars, guilders, pounds, marks, or francs. This multiple currency provision was authorized by the following terms of the mortgage securing the bonds:

> " . . . the . . . Bonds may be payable, at the option of the holder, both as to principal and interest, at some one or more of the following places in addition to the City of New York, and in the moneys current at such respective places of payment, at the following rates of exchange or

equivalents of $1,000, viz.: In London, England, £205.15.2 Sterling, or in Amsterdam, Holland, 2490 guilders, or in Berlin, Germany, 4200 marks, D.R.W., or in Paris, France, 5180 francs; . . ."

The bonds themselves provide:

"St. Louis Southwestern Railway Company, . . . for value received, hereby promises to pay to the bearer, or, if registered, to the registered holder, of this bond, on the first day of January, 1952, at its office or agency in the Borough of Manhattan, City and State of New York, One Thousand Dollars in gold coin of the United States of America, of or equal to the standard of weight and fineness as it existed January 1, 1912, or in London, England, £205 15s 2d, or in Amsterdam, Holland, 2490 guilders, or in Berlin, Germany, marks 4200, D.R.W., or in Paris, France, 5180 francs, and to pay interest thereon, at the rate of five per cent, per annum, from the first day of January, 1912, in said respective currencies, semi-annually . . ."

Since the parties agree that the terms of the bonds granted holders an option to elect payment in guilders, we must determine whether, despite this option, the Joint Resolution operated to make the bonds dischargeable in current United States legal tender—a dollar of legal tender to be repaid for every dollar borrowed.

Analysis of the terms of the Resolution discloses, first, that Congress declared certain types of contractual provisions against public policy in terms so broad as to include then existing contracts, as well as those thereafter to be made. In addition, future use of such proscribed provisions was expressly prohibited, whether actually contained in an obligation payable in money of the United States or separately "made with respect thereto." This proscription embraced "every provision" purporting to give an obligee a right to require payment in (1) gold; (2) a particular kind of coin or currency of the United States; or (3) in an amount of United States money measured by gold or a particular kind of United States coin or currency.

*Having thus unmistakably stamped illegality upon both outstanding and future contractual provisions designed to require payment by debtors in a frozen money value rather than in a dollar of legal tender current at date of payment,* Congress—apparently to obviate any possible misunderstanding as to the breadth of its objective—added, with studied precision, a catchall second sentence sweeping in "every obligation," existing or future, "payable in money of the United States," irrespective of "whether or not any such provision is contained therein or made with respect thereto." The obligations hit at by Congress were those "payable in money of the United States." All such obligations were declared dischargeable "upon payment, dollar for dollar, in any coin or currency [of the United States] which at the time of payment is legal tender for public and private debts." It results that if petitioners' claims rest upon "obligation[s] . . . payable in money of the United States," by the terms of the Resolution they shall be discharged upon payment of current legal tender dollars promised in gold or a particular kind of money. Decision must therefore turn upon the nature of the "obligation[s] . . . incurred" by the railroad in its bond contracts of 1912.

(Footnotes omitted), (emphasis added). Id. at 249–253, 59 S.Ct. at 849–851, 83 L.Ed. at 1271–1273.

■ It is clear, therefore, that the Act of June 5, 1933 was enacted in order to prevent persons holding contracts of various sorts from requiring payments of debts in a "frozen money value rather than in dollar of legal tender current at date of payments . . . [.]" Therefore, apart from the fact that Congress has acted and declared the Act is not to apply to transactions as set forth herein, the Act of June 5, 1933 is misplaced in the appellant's argument. Instead, Congress has provided for payment of obligations by persons to the states in legal tender of the United States.

Circulating notes of national banking associations and United States legal tender notes and other notes and certificates of the United States payable on demand and

circulating or intended to circulate as currency and gold, silver, or other coin shall be subject to taxation as money on hand or on deposit under the laws of any State or Territory: Provided, That any such taxation shall be exercised in the same manner and at the same rate that any such State or Territory shall tax money or currency circulating as money within its jurisdiction.[5]

Thus, payments in legal tender of the United States may be made to the legal subdivisions of the state—cities, townships, boroughs, and such other subdivisions of the Commonwealth.

Legal tender is defined by the Congress to include currency of the United States.[6] Currency is defined:

the term "currency of the United States" means currency which is legal tender in the United States, and include United States notes, Treasury notes of 1890, gold certificates, silver certificates, Federal Reserve notes, and circulating notes of Federal Reserve banks and national banking associations . . .[7]

▇ Thus, payment for the liabilities incurred by the appellant to the appellee is properly made in the Federal Reserve Notes of the United States of America or any other legal currency of the United States.

United States currency is legal tender for the payment of fines or other debts held by any citizen or non-citizen of the Commonwealth of Pennsylvania to the state. Accordingly, the order of the trial court is affirmed.[8]

5. Act of August 13, 1894, 31 U.S.C.A. § 425.

6. Act of July 23, 1965, 31 U.S.C.A. § 392.

7. Act of January 30, 1934, 31 U.S.C.A. § 444.

8. The appellant effectively waived all defenses by not filing any post-verdit motions pursuant to Pa.R.Crim.P.1123. We have, however, reached the merits of the appeal in light of the fact that appellant argued pro se. The interests of justice allow us to waive the rule in this case and dispose of this appeal on the merits. Pa.R.A.P. 105(a).