435 A.2d 1252

**Isadore B. COREN and Hilda Coren**

v.

**Matthew J. DiDOMENICO and Aurelio Nardoni and John Matthew, Inc.**

**Appeal of Matthew DiDOMENICO and Aurelio Nardoni.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Oct. 9, 1981.

Catherine M. Lecky, King of Prussia, for appellants.
Gary A. Hurwitz, Media, for appellees.

Before SPAETH, BROSKY and HOFFMAN, JJ.

PER CURIAM:

██ Following a nonjury trial in this assumpsit action, the lower court rendered a decision awarding appellees damages of $18,321.00. Appellants subsequently filed exceptions, which the lower court denied in the order from which the present appeal is taken.[1] We are unable to reach the merits, however, because the order denying appellants' exceptions has not been reduced to judgment and docketed. It is settled that "[a]n order denying exceptions following a nonjury trial is interlocutory and not appealable." *Heffner v. Bock,* 287 Pa.Super. 345, 346, 430 A.2d 318, 319 (1981). *See also Lashner v. Redevelopment Authority of the City of Philadelphia,* 286 Pa.Super. 549, 429 A.2d 659 (1981); *Unterberger v. Life Assurance Co. of Pennsylvania,* 286 Pa.Super. 469, 429 A.2d 34 (1981); *Slaseman v. Myers,* 285 Pa.Super. 167, 427 A.2d 165 (1981); *Penstan Supply Co. v. Hay,* 285 Pa.Super. 558, 424 A.2d 950 (1981). "Such an order does not

1. The order from which the present appeal has been taken is as follows:

AND NOW, to wit, this 29th day of February, 1980, upon consideration of the briefs and arguments presented by respective counsel in this matter, it is hereby ORDERED and DECREED that the Exceptions filed by the [appellants] to the Award entered by this Court on November 8, 1979, be and the same are hereby denied and dismissed. The Award entered by this Court on November 8, 1979 in favor of the [appellees] and against the [appellants] Matthew J. DiDomenico and Aurelio Nardoni in the sum of Eighteen Thousand Three Hundred Twenty-One Dollars ($18,321.00) and the Award entered in favor of defendant John Matthew, Inc., be and the same is hereby affirmed.

become appealable until, 'on praecipe of any party,' Pa.R. A.P. 301(d), it is 'reduced to judgment and docketed,' Pa.R. A.P. 301(c). *And see* Pa.R.C.P. 1038(e). The requirement that judgment be docketed is jurisdictional." *Unterberger v. Life Assurance Co. of Pennsylvania, supra,* 286 Pa.Super. at 470, 429 A.2d at 35. Because this requirement has not been met in the present case, the appeal is premature and must be quashed.[2]

Appeal quashed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I believe we should not quash the appeal but should reach the merits, and on the merits, remand for further findings of fact.

## 1

The action is in assumpsit to recover damages for breach of an agreement of sale. The case was tried by a judge sitting without a jury. On November 8, 1979, the judge entered a finding in favor of appellees and against appellants in the amount of $18,321. Appellants filed exceptions,

**2.** Despite the well settled jurisdictional principle embodied in our cases, the dissent would "consider the lower court's statement that it 'affirmed' as equivalent to a statement that it was 'entering judgment.'" At 1254. In support of its interpretation, the dissent assumes that the present appeal would be proper had the lower court stated that it was "entering judgment." *Id.* at 1254. That assumption is not warranted, for Pa.R.A.P. 301(c) expressly mandates that "*[a] direction by the lower court that a specified judgment,* sentence *or* other *order shall be entered, unaccompanied by actual entry* of the specified order *in the docket, ... does not constitute an appealable order.*" (Emphasis added.) That being the case, we cannot discern how the present order can be deemed appealable. Moreover, while the dissent's call for revision of the rules governing appeals is not without merit, the present statutes, rules, and cases defining and delimiting this Court's jurisdiction are sufficiently clear and readily applicable. Consequently, we can perceive no basis for construing lower court orders "liberally" to compensate for the inadvertence of counsel. *Cf. Gurnick v. Government Employees Insurance Co.,* 278 Pa.Super. 437, 440–41, 420 A.2d 620, 623–24 (1980) (HOFFMAN, J., dissenting) (no need to recognize a broad discretionary power of review of interlocutory orders).

and on February 29, 1980, the lower court, by the judge who had been the trial judge, entered an order dismissing appellants' exceptions and stating that "[t]he Award entered by this Court on November 8, 1979 ... be and the same is hereby affirmed." This appeal is from that order.

I agree with the majority that before we may consider the appeal on its merits, we must decide whether it is from an appealable order. Although appellees do not raise this issue, since it concerns the jurisdiction of this court we may, and should, raise it *sua sponte. Penstan Supply, Inc. v. Hay*, 285 Pa.Super. 558, 424 A.2d 950 (1981); *Williams v. Williams*, 253 Pa.Super. 444, 385 A.2d 422 (1978); *Polascik v. Baldwin*, 245 Pa.Super. 1, 369 A.2d 263 (1976). I also agree with the majority that an order dismissing exceptions following a trial without a jury is not appealable. Before an appeal will lie, final judgment must be entered. *Penstan Supply, Inc. v. Hay, supra.*

Ordinarily, an order dismissing exceptions is reduced to judgment by the clerk of the lower court on praecipe of any party. Pa.R.A.P. 301(d). That was not done here. Here, the lower court said that *it* "affirmed" the trial judge's finding in favor of appellees. If instead of saying that it "affirmed," the lower court had said that it was "entering judgment," I assume no question of appealability would arise. For I see no distinction of substance between a judgment entered by the clerk on praecipe of a party and a judgment entered by the court itself.

I believe we should consider the lower court's statement that it "affirmed" as equivalent to a statement that it was "entering judgment." If we must quash, we must. But a court's responsibility is to end controversies as promptly as the sound operation of the judicial system permits. Here, I believe, to quash prolongs the controversy unnecessarily. Having quashed, we must now assume that: one of the parties will file a praecipe that the clerk enter judgment; a second appeal will be taken; we shall then do what I think we should do now—remand for further findings of fact; and a third appeal will be taken. Confronted with so dishearten-

ing a prospect, I an unwilling to quash—even if that means construing the lower court's order very liberally.

Perhaps some good may after all come from this case. One reason for enforcing a rule as strictly as does the majority is to make an example of the erring parties, thereby encouraging others to do better. This assumes, however, that what they are supposed to do better is worth doing. But query: *Is* it worth insisting that one of the things a party must do is to file a praecipe with the clerk, at peril of having his appeal quashed if he doesn't? I don't think so. No doubt a praecipe and ensuing judgment make for a tidy docket. But tidiness should not become an end in itself. What an appellate court needs to know is what the *lower court*, not the clerk, did. It is the contents of the lower court's order, not the presence or absence of a praecipe, that should control our jurisdiction. So long as the docket is tidy enough to disclose when the lower court's order was filed and what it said, we can tell whether we have the power to hear the appeal. I therefore hope that the Advisory Committee on Appellate Court Rules and the Civil Procedural Rules Committee will re-examine Pa.R.A.P. 301 and Pa.R.C.P. 1038. Too many misguided litigants have tripped over them. *See e. g.,* in addition to this case, *Myerson v. Rolling Hill Hospital,* 289 Pa.Super. 185, 432 A.2d 1114 (1981); *Sun Oil Co. of Penna. v. Banghart,* 289 Pa.Super. 287, 432 A.2d 1115 (1981); *Dennis v. Smith,* 288 Pa.Super. 185, 431 A.2d 350 (1981); *Heffner v. Bock,* 287 Pa.Super. 345, 430 A.2d 318 (1981); *Lattanze v. Silverstrini,* 287 Pa.Super. 263, 429 A.2d 1201 (1981); *Walheim v. Kirkpatrick,* 287 Pa.Super. 130, 429 A.2d 1134 (1981); *Lashner v. Redevelopment Authority of the City of Philadelphia,* 286 Pa.Super. 546, 429 A.2d 659 (1981); *Carter v. Aaacon Auto Transport, Inc.,* 286 Pa.Super. 547, 429 A.2d 658 (1981); *Unterberger v. Life Assurance Company of Pennsylvania,* 286 Pa.Super. 469, 429 A.2d 34 (1981); *Slaseman v. Myers,* 285 Pa.Super. 167, 427 A.2d 165 (1981); *Folcarelli v. Transportation Services, Inc.,* 284 Pa.Super. 489, 426 A.2d 152 (1981); *Brogley v. Chambersburg Engineering Company,* 283 Pa.Super. 562, 424 A.2d 952 (1981).

2

Having concluded that we should not quash, I am obliged to consider the merits—although I recognize that my view of the merits controls no one.

On May 25, 1978, by written agreement, appellants promised to build a house on Lot No. 11, Glenwood Avenue, Aldan, Pennsylvania. The agreement provided for settlement on October 31, 1978, when appellees planned to move into the house. The house was to resemble one already built on Lot No. 24, subject to changes listed in clause 5 of the agreement. These changes included kitchen appliances, medicine cabinets, special carpeting, a hot water heater, and a window in the master bedroom bath, and also various "extras," including a fireplace, vanity, and special plumbing. The agreement called for payment of 50% of the cost of the "extras" at the time of signing the agreement. Appellees paid this 50%, as well as a deposit of $5,290, which was ten per cent of the purchase price.

On October 31, 1978, the house was far from complete. The flooring, carpeting, electrical fixtures, plumbing, kitchen appliances, sidewalks, driveway grading and downspouts were among those items not completely installed. Appellees appeared at settlement with their attorney, but because the house was not complete, settlement was not made, and this litigation followed.

In their Statement of Questions Involved, appellants identify six issues. However, these may be reduced to three.

a

Appellants first argue that the lower court erred in not disqualifying appellees' trial attorney, Gary Hurwitz. This issue arose because Mr. Hurwitz called his law partner William March to testify; Mr. March had represented appellees, and he testified regarding the events at the settlement, the condition of the house, and the value of his services.

The Code of Professional Responsibility, DR 5–102, provides in part:

DR 5–102. Withdrawal as Counsel When The Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

The circumstances enumerated in DR 5–101(B)(1) through (4) are:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

The practice of one attorney testifying and then continuing as trial counsel has been condemned by our Supreme Court. *See Kraynick v. Hertz,* 443 Pa. 105, 277 A.2d 144 (1971). This condemnation would ordinarily extend to a case in which an attorney testifies in behalf of clients while his associate or partner represents the same clients at the trial. *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 389 A.2d 568 (1978).

In refusing to disqualify appellees' trial counsel, the lower court relied on Pa.R.C.P. 222, which provides:

Where any attorney acting as trial counsel in the trial of an action is called as a witness in behalf of a party whom he represents, the court may determine whether such attorney may thereafter continue to act as trial counsel during the remainder of the trial.

The lower court ruled that appellants' request that appellees' trial counsel be disqualified

was in direct contradiction to a recently reached Stipulation between the parties intended to expedite a resolution of the overall dispute, by opening a Default Judgment against [appellants] and proceeding immediately to a trial on the merits, instead of argument on [appellants'] Petition to Open Judgment.

Slip op. at 5–6.[1]

In these circumstances the lower court's ruling should not be disturbed. Disqualification would have prevented expeditious resolution, which by joining in the stipulation appellants had themselves requested. Also, appellants have not pointed to any specific evidence of conflict of interest or bias on the part of Mr. March.

b

Appellants next argue that the lower court erred in holding that they had breached their agreement to sell appellees a completed house on settlement date. In appellants' view, it was appellees who breached the agreement by "preventing [appellants] from delivering a completed house on October 31, 1978." Appellants argue that the flooring, carpeting, electrical fixtures, and driveway ordered by appellees were not completed because of appellees' own failure to cooperate with the contractors appellees hired to install these items.[2]

1. Appellees brought this action on November 6, 1978. On February 6, 1979, a default judgment was entered against appellants. On October 2, 1979, pursuant to stipulation, the judgment was opened and the case was tried.

2. Appellants also argue that appellees prevented delivery of a completed house by failing to pay for all "extras" at the time they were ordered. Appellants refer to a clause in the agreement that provided:

 (C) Extras. Seller will make changes in or additions to the Plans and Specifications ... only if Buyer submits on Seller's form a written authorization to Seller for such Extra, together with payment in full to Seller of the cost of such Extra (as reasonably estimated by Seller) ...

 One might agree, that read alone, this clause required appellees to pay for all extras at the time they were ordered. However, the agreement also included a clause requiring payment of 50% of the cost of extras at the time of signing the agreement. At trial, appellants acknowledged the receipt of this 50% payment, and in their brief to this court they say that "the remaining 50% [was] to be paid

Appellants cite evidence of appellees' direct payment of bills to Roselli Carpets, David P. Tori, Inc., electrical contractor, and another contractor for the driveway. Appellees, on the other hand, contend that they did not make separate contracts with Roselli Carpets, David Tori, Inc., or any other contractor. They claim that they placed all orders for additions to the house "either directly with [appellants] or their subcontractors. In no instance did [appellees] employ third party contractors to work on the premises." (Appellees' Brief at 7) Appellee Isadore Coren testified that appellant Nardoni and a salesman made arrangements for him to go to Roselli Carpets and order the carpeting he wanted, and that he paid Roselli only the amount over that which appellants credited him. He said: "I didn't make no arrangements with these people." (N.T. 64) Coren also testified that he dealt with appellants as to all of the additions to the house, and that he did not make separate contracts with the carpet company, electrician, or paving contractor to install the additional work he desired.

Resolution of this issue is critical to disposition of this case. Unfortunately, we have received no guidance from the lower court, which filed no findings of fact. In its opinion filed in response to the appeal, the lower court states:

> Defendants, however, attempt to justify their failure to perform under the contract by alleging that the Plaintiffs failed to perform or pay under certain collateral Agreements for the purchase of a refrigerator and a dishwasher. If there was any nonperformance on the part of the Plaintiffs, and it was the finding of the Court that it [sic] was not, it was so insubstantial as not to affect the overall performance under the contract.

(Slip op. at 4)

at settlement." (Appellants' Brief at 3) Appellee Isadore Coren testified that he was prepared to pay the remaining 50% at settlement. In these circumstances, appellants' argument that appellees breached the agreement by failing to pay for the extras is without merit.

Appellants' defense, however, was not based on alleged "collateral Agreements for the purchase of a refrigerator and a dishwasher," but on alleged separate agreements for flooring, carpeting, electrical fixtures and the driveway. Given only the lower court's opinion, it cannot be determined whether appellants' defense has any merit. Where the lower court has failed to make critical findings of fact, the proper remedy on appeal is to reverse and remand for further findings.[3] *See Bedillion v. W. A. Wilson Stave Co.,* 271 Pa.Super. 292, 413 A.2d 411 (1979).

c

Appellants state that "[t]he Award of $18,321 is $601.20 less than the amount claimed. Unfortunately, since the Trial Judge did not submit Findings of Fact, it is impossible to determine which of the items of damage that were claimed were not considered by the Trial Judge to be justified." (Appellants' Brief at 37) Appellants then challenge the legal and evidentiary basis of several of appellees' claims, including their claim for loss of bargain on the sale of their own home, interest and fees on swing loans, rental of two apartments, and attorney's fees.

It cannot be determined from the lower court's opinion which of appellees' claims for damages the court rejected in reaching its decision to award somewhat less than the full amount sought by appellees. In such circumstances, the proper remedy is to remand to the lower court for an explanation of how it reached the amount of damages it awarded. *See Warden v. Zanella,* 283 Pa.Super. 137, 423 A.2d 1026 (1980).

---

**3.** The record indicates that at the conclusion of trial, the trial judge asked counsel for the parties whether the case required findings of fact. Counsel for appellants said: "I think it does require findings of fact, Your Honor." The court responded: "Well, if it does, you better give me some findings and conclusions then . . . ." (N.T. 168) No suggested findings of fact or conclusions of law appear in the record, although appellants say in their brief to this court that "both parties filed proposed findings of fact and memoranda with the Trial Judge." (Appellants' Brief at 8)

For the foregoing reasons, I should not quash but should reverse and remand for further findings of fact, with instructions that when such findings of fact had been filed, either party might file exceptions, any further appeal to be from such judgment as was entered following dismissal of those exceptions.