657 A.2d 511

**JOHNSTON THE FLORIST, INC., Appellant,**

v.

**TEDCO CONSTRUCTION CORPORATION and O'Neil Personal Care Corporation, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1994.

Filed April 12, 1995.

Victor H. Pribanic, White Oak, for appellant.

Paul S. Kline, Pittsburgh, for appellees.

Before ROWLEY, P.J., and CAVANAUGH, WIEAND, McEWEN, CIRILLO, DEL SOLE, JOHNSON, HUDOCK and SAYLOR, JJ.

CAVANAUGH, Judge.

This is an appeal by Johnston the Florist, Inc. from the October 20, 1993 order denying its motion for post-trial relief. For the following reasons, we affirm.

The facts were ably summarized by the trial court as follows:

On December 17, 1986 [Appellee TEDCO Construction Corporation] entered into a contract to build a personal care facility for [O'Neil Village Personal Care Corporation (O'Neil)]. This was a project financed by the U.S. Department of Housing and Urban Development (HUD). Pursuant to HUD, the approved amount for landscaping totaled $20,000.00. Although TEDCO obtained estimates to accomplish this landscaping for the approximate amount that was approved by HUD, Ronald McKay, the owner's principal, decided to expand the scope of landscaping and to deal directly with his own landscaping contractor. On behalf of O'Neil, Ronald McKay wanted to "beef up the landscaping," and he dealt exclusively with his friend, client and neighbor—Earle Guffey, Chairman of Johnston the Florist, Inc.

During the Summer of 1987, Ron McKay, on behalf of the owner, and Earle Guffey, on behalf of Johnston the Florist, Inc., negotiated the scope and price of landscaping services for the personal care facility between themselves, with TEDCO not being involved. Johnston developed an estimate and submitted it to McKay and O'Neil, with nothing ever submitted to TEDCO. During the negotiations for, and the performance of, the contract for landscaping services, Johnston never wrote a letter to TEDCO outlining what was to be done, never gave TEDCO a breakdown concerning costs, never told TEDCO what the work was going to be and what it would look like, and never told TEDCO what would be involved in landscaping services.

Because the owner was handling its own landscaping work, TEDCO never submitted the name of a sub-contractor for landscaping work when it was seeking approval for its sub-contractors pursuant to HUD procedures. Indeed,

TEDCO never checked or certified that the workers of Johnston were being paid the prevailing minimum wages under HUD guidelines because Johnston was not a subcontractor of TEDCO.

Beginning on August 18, 1987, Johnston began to deliver materials to the job site. Although there was no contract with TEDCO, these materials and others delivered on September 21 and September 23, 1987 were being delivered pursuant to a "landscaping bid" given by Johnston to the owner.

It was not until September 24, 1987 that Johnston submitted a detailed proposal to the owner alone for the scope of landscaping and its price. It is significant that this detailed proposal was submitted directly to the owner, O'Neil and Ronald McKay. This estimate was never provided to TEDCO.

During the course of the construction, TEDCO did not supervise the landscaping work being performed by Johnston and did nothing more than coordinate the activities of Johnston to ensure that its work did not interfere with TEDCO's subcontractors. It was established that this degree of coordination and lack of supervision is typical of the construction industry practices when dealing with suppliers or contractors who contract directly with the owner.

When the project was finally completed in early November, 1987, Earle Guffey, as Chairman of Johnston the Florist, demanded payment from Ronald McKay as the owner, rather than from TEDCO. In a letter to Ronald McKay, Earle Guffey indicated that it was the owner, not TEDCO, who approved the work, directed it and agreed to pay for it.

Trial Court Opinion, at pp. 2–4.

On December 18, 1989, Johnston filed a complaint against TEDCO alleging that, as a result of an alleged landscaping contract entered into between TEDCO and Johnston, TEDCO

owed Johnston a balance of $28,650.00.[1] An amended complaint was thereafter filed on March 26, 1990, whereby Johnston added O'Neil as a defendant. By agreement of the parties, the matter was submitted to compulsory arbitration. An award of $28,650.00 was entered on June 12, 1992, in favor of Johnston. An appeal was filed by TEDCO in the Court of Common Pleas of Allegheny County. Following a non-jury trial, the Honorable Gerald Bigley found in favor of TEDCO. Johnston filed post-trial motions which were denied by an October 20, 1993, order of the trial court. Following the entry of this order, an appeal was filed to this Court. This Court's Central Legal Staff contacted Johnston notifying them that no judgment had been entered on the verdict and requesting that it file a praecipe for entry of judgment. No response was had from Johnston. In order to reexamine the holding of *Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363 (1993), *alloc. den.*, 535 Pa. 652, 634 A.2d 216, and to determine whether the merits of the case may be decided even without the entry of judgment, this matter was certified *en banc.*

Finally, on August 31, 1994, subsequent to this Court's notification to the parties involved herein that this matter would be heard *en banc*, Johnston praeciped for the entry of judgment. Thus, even though the appeal was filed prior to the entry of judgment, it is clear that jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment. *See Reuter v. Citizens & Northern Bank*, 410 Pa.Super. 199, 599 A.2d 673 (1991); *Arcadia Company, Inc. v. Peles*, 395 Pa.Super. 203, 576 A.2d 1114 (1990). Such are the circumstances of the present matter. However, due to Johnston's prior refusal to enter judgment upon notification to do so from this Court, the need arises to clarify this Court's authority to address an appeal from an order upon which judgment has not been entered.

1. The bill submitted to TEDCO from Johnston totaled $48,150.00. A sum of $19,500.00 had already been paid to Johnston.

■■ "Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court." *Grove North America v. Arrow Lift*, 421 Pa.Super. 12, 17, 617 A.2d 369, 371 (1992). An appeal from an order denying post-trial motions is interlocutory. Pa.R.A.P. 301(a), (c) and (d). Thus, it follows that an appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions. *Davanzo v. Finelli*, 293 Pa.Super. 70, 437 A.2d 995 (1981). Because the entry of judgment was considered to be a prerequisite to the exercise of this Court's jurisdiction, it was long this Court's policy to quash an appeal from an order upon which judgment had not been entered. *See Basalyga v. Hohensee*, 431 Pa. 191, 245 A.2d 255 (1968); *Enock v. Reifer*, 293 Pa.Super. 141, 437 A.2d 1245 (1981); *Hassler v. Columbia Gas Transmission Corp.*, 294 Pa.Super. 86, 439 A.2d 762 (1982); *Crosby v. Commonwealth, Dept. of Transp.*, 378 Pa.Super. 72, 548 A.2d 281 (1988), *alloc. den.*, 522 Pa. 576, 559 A.2d 37 (1989).

However, in *Bonavitacola v. Cluver, supra*, 422 Pa.Super. 556, 619 A.2d 1363, a panel of this Court decided that it would not quash an appeal from an order denying post-trial motions, and would instead, in the interest of judicial economy, decide the merits of an appeal lying from the interlocutory order. In *Bonavitacola*, appellants filed an appeal from the trial court's denial of their post-trial motions. Our Central Legal Staff advised appellants to enter judgment, however, such request was refused. Appellants, who were health professionals, stated that to praecipe for the entry of judgment would expose them to liability in excess of their medical insurance. Refusing the appellee's motion to quash the appeal, this Court stated that the mandates of judicial economy required that the appeal be heard. This Court reasoned:

> As long as the order from which a party appeals "was clearly intended to be a final pronouncement on the matters discussed in the opinion [accompanying the order], ... the appeal is properly before us and ... we have jurisdiction to address the parties' claims." *Murphy v. Murphy*, 410

Pa.Super. 146, 152, 599 A.2d 647, 650 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992). The rationale behind treating this appeal as one from an entered judgment is to allow the appeal which is in progress to proceed, economizing judicial resources. [*McCormick v. Northeastern Bank of PA*, 522 Pa. 251, 561 A.2d 328 (1989); *Summit Fasteners v. Harleysville Nat'l. Bank*, 410 Pa.Super. 56, 599 A.2d 203 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992) ]. *See also Murphy v. Murphy*, [599 A.2d at 650]. Were we to quash an appeal from an order which, except for the entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow. *See McCormick, supra*, 522 Pa. 251, 561 A.2d 328 *citing Commonwealth v. Allen*, 278 Pa.Super. 501, 505 n. 3, 420 A.2d 653, 654 n. 3 (1980).

*Bonavitacola*, 422 Pa.Super. 563, 619 A.2d at 1367. *See also McCormick, supra*, 522 Pa. 251, 561 A.2d 328.

However, the law of this Commonwealth has long recognized that the entry of judgment is a jurisdictional matter. "The requirement that judgment be docketed is jurisdictional." *Murphy v. Brong*, 321 Pa.Super. 340, 343, 468 A.2d 509, 511 (1983); *Hilliard v. Hilliard*, 295 Pa.Super. 317, 319, 441 A.2d 1251, 1252 (1982); *Unterberger v. Life Assurance Co. of Pennsylvania*, 286 Pa.Super. 469, 470, 429 A.2d 34, 35 (1981); *Gadbois v. Leb–Co Builders, Inc.*, 290 Pa.Super. 523, 525, 434 A.2d 1267, 1268 (1981); *Coren v. DiDomenico*, 291 Pa.Super. 331, 333, 435 A.2d 1252, 1253 (1981). Moreover, "the entry of judgment is a prerequisite to our exercise of jurisdiction." *Davanzo v. Finelli*, 293 Pa.Super. 70, 72, 437 A.2d 995, 996 (1981); *Firestone Tire & Rubber Co. v. W.P. Cooke, Inc.*, 289 Pa.Super. 333, 334, 433 A.2d 93 (1981); *Slaseman v. Myers*, 285 Pa.Super. 167, 168, 427 A.2d 165, 166 (1981). *See also* 2 Goodrich–Amram 2d § 1038(b):1, at 501 (1976). On the other hand there are some instances wherein a party has failed to enter judgment and our appellate courts may "regard as done that which ought to have been done." *McCormick v. Northeastern Bank of Pa.*, 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n.

1 (1989); *Summit Fasteners v. Harleysville Nat'l Bank*, 410 Pa.Super. 56, 59 n. 1, 599 A.2d 203, 205 n. 1 (1991), *allocatur denied*, 530 Pa. 633, 606 A.2d 902 (1992); *Commonwealth v. Allen*, 278 Pa.Super. 501, 505 n. 3, 420 A.2d 653, 654 n. 3 (1980). However, in all of these above cited cases, the failure of the parties to enter judgment was the result of mere oversight, not outright refusal, as was the case in *Bonavitacola*, and which was the case here.

Pennsylvania Rule of Appellate Procedure 301(a) provides:

**Rule 301. Requisites for an Appealable Order**

(a) **Entry Upon Docket Below.** No order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court. Where under the applicable practice below an order is entered in two or more dockets, the order has been entered for the purposes of appeal when it has been entered in the first appropriate docket.

Pa.R.A.P. 301, 42 Pa.C.S. In the Note following the rule, it is added that "[t]he 1986 Amendment to Rule 301 states that no order shall be appealable until entered in the docket and deletes reference to reduction of an order to judgment as a prerequisite for appeal in every case. *This deletion does not eliminate the requirement of reduction of an order to judgment in an appropriate case.*" *See Note*, Pa.R.A.P. 301, 42 Pa.C.S. (emphasis added).

■■ Based upon the clear jurisdictional imperative that judgment be entered as a prerequisite to the exercise of judicial review, we conclude that, in all such cases, there is no authority for this court to review the merits of such an appeal even in the face of a refusal by the parties to enter judgment. To the extent that *Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363 (1993), *alloc. den.*, 535 Pa. 652, 634 A.2d 216, would permit appellate review in the interest of judicial economy when the parties have refused to enter judgment, it is specifically disapproved.[2]

---

**2.** Although the appropriate remedy upon the failure to enter judgment would ordinarily be to quash the appeal, we note that dismissal may

Since judgment has now been entered, we will address the merits of Johnston's appeal. Two issues are presented for our review: 1) whether an oral contract existed between TEDCO and Johnston; and 2) whether TEDCO may be held liable on a contract between Johnston and O'Neil.

Johnston first argues that it had an oral contract with TEDCO, and thus, TEDCO is liable to it for the unpaid amount of $28,500.00. In support of its position, Johnston stresses the importance of three "invoices" that were sent to TEDCO during the course of performance of the landscaping that indicated the materials used on the project were "Sold to Tedco." At no time did TEDCO act on these invoices. Thus, Johnston avers that TEDCO's silence as to these documents was its acceptance of the oral contract. In support of its argument, Johnston cites the Restatement (Second) of Contracts, section 69, which provides, in pertinent part:

(1) Where an offeree fails to reply to an offer, his silence and inaction operate as an acceptance in the following cases only:

(a) Where an offeree takes the benefit of offered services with reasonable opportunity to reject them and reason to

also be an appropriate method of disposition. Pennsylvania Rule of Appellate Procedure 902 provides:

**Manner of Taking Appeal**

An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902, 42 Pa.C.S. In a comment to this Rule, it is provided: The 1986 revision to the last sentence of the rule indicates a change in approach to formal defects. The reference to dismissal of the appeal has been deleted in favor of a preference toward, remanding the matter to the lower court so that the omitted procedural step may be taken, thereby enabling the appellate court to reach the merits of the appeal. Nevertheless, *dismissal of the appeal ultimately remains a possible alternative where counsel fails to take the necessary steps to correct the defect.*

Pa.R.A.P. 902, 42 Pa.C.S., Comment (emphasis added).

know that they were offered with the expectation of compensation.

Restatement (Second) of Contracts § 69 (1977).

 Before a contract can be found, all of the essential elements of the contract must exist. Therefore, in determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed. If all three of these elements exist, the agreement shall be considered valid and binding. *Burkett v. Allstate Insurance Co.*, 368 Pa.Super. 600, 534 A.2d 819 (1987), *vacated on other grounds,* 520 Pa. 94, 552 A.2d 1036 (1988). Furthermore, in the case of a disputed oral contract, what was said and done by the parties, as well as what was intended by what was said and done by the parties, are questions of fact to be resolved by the trier of fact, in this instance the trial court. *Solomon v. Luria,* 213 Pa.Super. 87, 246 A.2d 435 (1968). "The burden is on the plaintiff to prove by a preponderance of the evidence the existence of the contract to which the defendant is a party." *Viso v. Werner,* 471 Pa. 42, 46, 369 A.2d 1185, 1187 (1977).

 TEDCO, in support of its position that a contract for payment did not exist between the parties, relies upon the following facts of record: 1) the alleged "invoices" were not invoices for payment, but rather were merely delivery slips that indicated that certain materials had been delivered to the job site; 2) Johnston and O'Neil negotiated the landscaping contract and TEDCO had no knowledge of the terms of the contract, nor the costs; 3) HUD allowed only $20,000.00 for the landscaping and TEDCO was never aware that this amount had increased to $48,150.00; and 4) TEDCO did not supervise the progression of the landscaping.

The trial court, after reviewing all of the testimony, found that:

> The evidence in this case overwhelmingly established that there was no oral or other contract between Johnston and

TEDCO for the full landscaping services amounting to $48,150.00. The claim which [Johnston] pursued against TEDCO was the result of a contract for landscaping services provided by Johnston to the owner of the personal care facility, [O'Neil], and its principal, Ronald McKay. At all times during negotiations for, and performance of, landscaping services, [Johnston] dealt only with Ronald McKay and O'Neil and looked only to them for payment. It is clear that it was only after [O'Neil] encountered financial and other difficulties that Johnston turned its sights on TEDCO for payment.

Trial Court Opinion, at p. 5.

After our review of the evidence and the findings made by the trial court, we agree with the trial court's conclusion that no oral contract existed between TEDCO and Johnston. Clearly, given the evidence presented, Johnston did not meet its burden of proving that an oral contract existed. Further, in rejecting Johnston's claim that Restatement (Second) of Contracts § 69 is applicable, we cannot find that TEDCO accepted the alleged offer through silence. It is well settled that, "[s]ilence will not constitute acceptance of an offer in the absence of a duty to speak." *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 503, 450 A.2d 36, 39 (1982); Restatement (Second) of Contracts § 69. Also, section 69 cannot be satisfied in that we can find no proof of record that TEDCO had reason to know that Johnston performed its services with the expectation that TEDCO would compensate it. Thus, given the fact that TEDCO was not involved in the negotiations with Johnston, we can find no duty upon TEDCO to respond to the "invoices" that were sent to them, unsigned, by Johnston.

In the alternative, Johnston asserts that, assuming a contract existed between O'Neil and itself, TEDCO has assumed the responsibility to pay the remaining debt on the contract. The Statute of Frauds provides, in pertinent part,

### § 3. Promise to answer for debt of another

No action shall be brought whereby to charge any executor or administrator, upon any promise to answer damages out of his own estate, or whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized.

33 P.S. § 3. However, an exception to this rule exists where the "main purpose" or the "leading object" of the promisor (in the present case TEDCO) is to serve its own pecuniary or business purpose. *Biller v. Ziegler,* 406 Pa.Super. 1, 8, 593 A.2d 436, 440 (1991). Thus, Johnston alleges that since TEDCO was the general contractor who was responsible for the overall completion of the job with O'Neil, "completion of [Johnston's] work not only advanced the pecuniary and business interests of [TEDCO], it was indeed essential for the final closing of the project, final payment to [TEDCO], and payment by [TEDCO] of the balance of the sub-contractors." Johnston's Brief, at p. 17.

As summarized in *Biller,*

The leading object rule applies whenever a promisor, in order to advance some pecuniary or business purpose of his own, purports to enter into an oral agreement even though that agreement may be in the form of a provision to pay the debt of another. [*Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 413, 491 A.2d 882, 884 (1985) ], *quoting Goodling v. Simon,* 54 Pa.Super. 125, 127 (1913). *Accord Eastern Wood Products Co. v. Metz,* 370 Pa. 636, 641, 89 A.2d 327, 330 (1952). As the *Armbruster* court explained, where the surety-promisor's main purpose is his own primary or business advantage, the gratuitous or sentimental element often present in suretyship is eliminated. [*Armbruster,* 341 Pa.Super. 413, 491 A.2d at 884]. Thus, there is less need for cautionary or evidentiary formality in the commercial context. *Id. The determination as to whether a promisor's main purpose for making a guaranty was to*

*serve his own pecuniary or business ends is for the trier of fact,* and will not be reversed absent abuse of discretion. *Id.*, 341 Pa.Super. 413, 491 A.2d at [884].

*Biller*, 406 Pa.Super. 9, 593 A.2d at 440 (emphasis added).

 TEDCO urges this Court not to address this issue because Johnston failed to raise the merits of this claim in its amended complaint. "It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court." *Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975). As contended, Johnston has not raised the merits of this issue in either its amended complaint or at trial. We note that the matter was raised in Johnston's brief in support of its post-trial motions, but the merits were never addressed by the trial court. We agree, then, that the first time this issue is to be addressed is on appeal. Because the issue of whether TEDCO's main purpose was to benefit itself is one for the trier of fact, this Court will not hear this matter. Moreover, as noted in our discussion of the first issue, TEDCO made no oral promises to Johnston.

Judgment affirmed.

WIEAND, J., files a concurring statement.

HUDOCK, J., files a concurring and dissenting opinion in which McEWEN, DEL SOLE and SAYLOR, JJ., join.

HUDOCK, Judge, concurring and dissenting.

I join the majority in its disposition of the merits of this appeal. I also agree that while the belated entry of judgment by Appellant unquestionably gives this court jurisdiction, Appellant's prior refusal to enter judgment upon notification to do so by this court requires this court to clarify our authority to address an appeal from an order upon which judgment has not been entered. My disagreement with the majority's discussion of our authority under these circumstances results from my belief that we do have the authority to hear the appeal, while not being required to. I do not read *Bonavita-cola v. Cluver, supra*, 422 Pa.Super. 556, 619 A.2d 1363, as

mandating that we hear an appeal where judgment has not been entered. Rather I believe *Bonavitacola* leaves to our discretion whether or not to hear the appeal, and as thus interpreted, I concur with its holding.

The majority finds the entry of judgment to be a *sine qua non* to jurisdiction, yet it acknowledges that our Supreme Court has found jurisdiction to exist in certain situations where judgment has not been entered. The rationale of the Court in those situations was that we may "regard as done that which ought to have been done." *McCormick v. Northeastern Bank of PA, supra*, 522 Pa. 251, 561 A.2d 328. The majority distinguishes those cases on the basis that the failure to enter judgment was the result of oversight, not outright refusal as was the case in *Bonavitacola* and here.

But if, as the majority opines, entry of judgment is the sole and exclusive talisman creating jurisdiction, then the intent of the parties is irrelevant. Logically, the majority must hold that if there is a judgment, there is jurisdiction; if there is no judgment, there is no jurisdiction. Yet our Supreme Court has held otherwise in the very cases cited by the majority.

I believe our Supreme Court has authorized our court to overlook this defect in procedure when the interest of justice or judicial economy requires it, as with any other procedural defect.

McEWEN, DEL SOLE and SAYLOR, JJ., join.

WIEAND, Judge, concurring.

I join the majority's holding that an order denying post-trial motions is not an order which is final and appealable and that an appeal will lie only from the judgment thereafter entered. In the instant case, judgment has now been entered; and, therefore, the appeal is presently before this court for decision.

On the merits, I agree that the judgment in favor of TEDCO Construction Corporation must be affirmed. The trial court's finding that there was no agreement by TEDCO Construction Corporation to pay for work ordered by O'Neil Personal Care Corporation and performed by Johnston the

Florist, Inc. is amply supported by competent evidence. Therefore, it is unnecessary to consider whether an oral agreement by TEDCO Construction Corporation to pay for such work, if it had existed, would have been enforceable under the Statute of Frauds relating to a promise to pay the debt of another.