J-A16014-25
J-A16015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 384 EDA 2025 |

Appeal from the Order Entered March 31, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000248-2018,
CP-51-DP-0000248-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: E.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 385 EDA 2025 |

Appeal from the Decree Entered January 13, 2025
In the Court of Common Pleas of Philadelphia County Juvenile
Division at No(s): CP-51-AP-0000491-2023

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:       **FILED SEPTEMBER 16, 2025**

C.S. ("Mother") appeals from the decree and order,[1] entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to E.M.S. ("Child") (born 9/09) and changing the goal to

---

[1] We have consolidated these appeals, sua sponte, pursuant to Pa.R.A.P. 513.

adoption.[2]  After careful review, we affirm on the basis of the thorough and well-written opinion of the Honorable Cateria R. McCabe.

As the trial court has thoroughly set forth the history of this matter, we do not repeat it here.  In short, the Philadelphia Department of Human Services ("DHS") initially became aware of this family in 2018 due to ongoing concerns with Mother's drug use.  A resulting dependency matter was ultimately discharged on September 19, 2018, with Child being placed in the custody of her father.[3]  DHS again became involved with the family on December 31, 2020, after receiving reports that Child had not been attending school; there were also concerns regarding Mother's mental health.  Child was

_____

[2] Mother initially appealed from a January 13, 2025 order that purportedly changed the goal to adoption in Child's dependency matter.  However, that order did not reflect a goal change but, instead, continued the status quo in dependency.  As such, the January 13, 2025 order did not appear to be final and appealable.  Therefore, on March 21, 2025, this Court issued a show cause order directing Mother's counsel to respond as to the order's appealability.  *See In the Interest of N.M.*, 186 A.3d 998 (Pa. Super. 2018) (order continuing child's goal and placement not final or otherwise appealable).

On March 31, 2025, counsel responded that she filed a motion in the trial court to modify the disposition of the January 13, 2025 order to accurately reflect the goal change to adoption.  On March 31, 2025, the trial court amended the order, changing Child's goal to adoption.  This Court's docket was changed to reflect the entry on the trial court docket of the March 31, 2025 order.  The notice of appeal filed on February 21, 2025, is treated as timely filed from the entry of the final, appealable order on March 31, 2025.  *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511 (Pa. Super. 1995) (appeal filed prior to entry of final order treated as timely filed); Pa.R.A.P. 905(a)(5).

[3] At some point, Father moved to Missouri and was no longer involved in the care of Child.  Father's parental rights have also been involuntarily terminated. He is not a party to this appeal.

placed with her paternal grandmother. Again, on February 10, 2021, DHS received a general protective services report alleging concerns regarding Mother's mental health. On November 5, 2021, Mother obtained full custody of Child and, on November 12, 2021, went to the home of Child's paternal grandmother to retrieve Child. DHS obtained an order of protective custody after Child reported that she was "fearful to return to [M]other's care" and that Mother "frequently use[d] physical discipline by way of punching and kicking." Application for Order of Protective Custody, 11/12/21, at 2 (unpaginated).

Child was placed in the care of her Paternal Aunt, where she remains to this day, and was adjudicated dependent on April 6, 2022. Mother was given case plan objectives as follows:

> The [c]ourt ordered Mother to be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug screen, dual diagnosis assessment, monitoring of her current treatment, and three random drug screens prior to the next listing. Mother was also ordered to attend family therapy with [] Child when appropriate. Additionally, Mother was ordered to attend the Achieving Reunification Center (ARC) for parenting classes. Mother was permitted supervised visits with [] Child at [] Child's discretion.

Trial Court Opinion, 7/7/25, at 2.

The trial court held numerous permanency review hearings throughout the life of the case; at each hearing, Mother remained noncompliant with her objectives and made no progress toward alleviating the circumstances that necessitated Child's placement.

On December 8, 2023, DHS filed petitions to change the goal from reunification to adoption and to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938. The trial court held a hearing[4] on the petitions on January 13, 2025, at which time the court received testimony from Community Umbrella Agency Case Manager Solomon Fulton and Mother. Following the hearing, on January 13, 2025, the trial court entered a decree involuntarily terminating Mother's parental rights under subsections 2511(a)(1), (2), (5), (8), and (b).[5] On March 31, 2025, the court

_____

[4] The trial court appointed Irene Levy, Esquire, to serve as counsel for Child and William A. Calandra, Esquire, as her guardian ad litem. *See* 23 Pa.C.S.A. § 2313(a).

[5] Section 2511(a) provides, in relevant part, that a parent's rights to a child may be involuntarily terminated based on the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent

*(Footnote Continued Next Page)*

issued an amended order changing Child's permanency goal to adoption. ***See***

***supra***, n.2. Mother filed a timely notice of appeal. Both Mother and the trial

court have complied with Pa.R.A.P. 1925. Mother raises the following claim

for our review: "Whether [DHS] met its burden and whether Mother's parental

rights should have been terminated." Brief of Appellant, at 3.

Our standard of review of an order involuntarily terminating

parental rights is well-settled:

> [W]e are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

_____

> cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8).

*In re L.W.*, 267 A.3d 517, 522 n.4 (Pa. Super. 2021) (citation omitted).

> Subsections 2511(a) and (b) of the Adoption Act set forth the grounds a petitioner must prove in order for the court to grant an involuntary termination of parental rights. *See* 23 Pa.C.S.[A] § 2511. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination[.] . . . If the trial court finds clear and convincing evidence supporting the existence of one of the grounds for termination set forth in [s]ubsection 2511(a), the court must then consider whether termination would best serve "the developmental, physical[,] and emotional needs and welfare of the child" under [s]ubsection 2511(b).

*In re Adoption of C.M.*, 255 A.3d 343, 359 (Pa. 2021). Under subsection 2511(b), "the child's 'emotional needs' and 'welfare' include 'intangibles such as love, comfort, security, and stability.'" *In the Int. of K.T.*, 296 A.3d 1085, 1106 (Pa. 2023) (citation omitted). Where the trial court has found that termination is appropriate under more than one subsection of section 2511(a), "this court need only agree with the trial court's decision as to any one subsection in order to affirm the termination of parental rights." *In re T.M.T.*, 64 A.3d 1119, 1125 (Pa. Super. 2013) (brackets and internal quotation marks omitted).

After a careful review of the record, the briefs on appeal, and the relevant case law, we conclude that DHS presented clear and convincing evidence to terminate Mother's parental rights under subsections 2511(a)(2) and (b). Specifically, with respect to subsection 2511(a)(2), the court found that: Child has been in the care of DHS consistently since November 2021; Mother has failed to remedy her parental incapacity, particularly the mental

health and parenting concerns which led to Child's placement; Mother failed to successfully complete a mental health program throughout the life of the case; Mother failed to avail herself of ARC's services to address her parenting skills; Mother has not made an active effort to comprehend the circumstances which brought Child into care; Mother lacks the desire or ability to remedy the conditions that led to Child's placement; and Mother's actions have left Child without the essential parental care, control, and subsistence necessary for her physical or mental well-being. **See** Trial Court Opinion, 7/7/25, at 12-13.

Moreover, the court concluded that termination would be in Child's best interests, pursuant to subsection 2511(b), where: Child is fifteen years old and has spent more than three years outside Mother's care and control; Child has no bond with Mother, let alone a parental bond; Child consistently expressed she had no desire to visit with Mother; Child shares a parental bond with Paternal Aunt, who is an adoptive resource and provides Child with love, support, care, and comfort; Child looks to Paternal Aunt to meet her basic needs and to provide safety and stability, including meeting her medical, emotional, and educational needs; Paternal Aunt ensures Child consistently attends therapy to address the trauma she experienced in Mother's care; and Child has expressed that she does not desire reunification with Mother and, instead, wishes to be adopted by Paternal Aunt. **See id.** at 16-18.

The record supports the findings of the trial court. **In re L.W.**, **supra**. Accordingly, we find no abuse of discretion and affirm on the basis of Judge

- 7 -

McCabe's opinion.  The parties are directed to attach a copy of that decision in the event of further proceedings.[6]

Decree and order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/16/2025

---

[6] Based on our disposition, Mother's challenge to the goal change order has been rendered moot.  ***See Interest of D.R.-W.***, 227 A.3d 905 (Pa. Super. 2020).  Moreover, in her brief, Mother fails to present argument with respect to the goal-change order.  For that reason, we would find any claim with respect thereto to be waived.  ***See*** Pa.R.A.P. 2119(a); ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (issues are waived if appellate brief fails to provide meaningful discussion with citation to record and relevant authority).