J-S33042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHARON POLLACK, HARRY POLLACK, JANE DOE, AND JOHN DOE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THE ACADEMY IN MANAYUNK D/B/A AIM ACADEMY | : | No. 268 EDA 2025 |
| | : | |
| APPEAL OF: SHARON POLLACK AND HARRY POLLACK | : | |

Appeal from the Orders Entered December 11, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-24171

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED NOVEMBER 12, 2025**

Sharon Pollack and Harry Pollack (collectively "the Pollacks") appeal from orders entered by the Montgomery County Court of Common Pleas ("trial court") granting summary judgment in favor of the Academy in Manayunk d/b/a AIM Academy ("AIM") and denying the Pollack's motion for summary judgment as moot.  We affirm.

The trial court aptly summarized the facts and procedural history of this case as follows:

A.P., a high-school student at [AIM], a private school, was asked to withdraw or face expulsion after she falsely accused a fellow student of racist conduct.  In recommending that she withdraw, [AIM] stated to A.P.'s parents, [the Pollacks], that after A.P. obtained mental health treatment, she could reapply to [AIM] but that "her enrollment is not guaranteed."  When A.P. did seek

reenrollment and it was denied, her parents brought this action against [AIM]. …

The incident that led to this dispute occurred on April 14, 2021, when A.P. was in the 11th grade at [AIM]. [AIM] received … a report of "Hate Speech" submitted by A.P. The report included a photograph of another [AIM] student, reported as wearing "blackface" in a deliberately racist act. In fact, as A.P. later admitted, the student was engaged in a spa night on Facetime and was wearing a mud mask. A.P. had secretly recorded the photo and a video of the student and posted them as an act of revenge. Two days later, even after counseling from [AIM]'s leadership, A.P. showed a looped video of the student wearing a mud mask to Black students at the school, including the president and members of the Black Student Union, and again characterized the student's conduct as intentionally racist.

At a meeting on April 28, 2021, [AIM] provided a lengthy letter to A.P.'s parents. ([Memorandum of Law in Support of AIM's Motion for Summary Judgment, 7/26/2024, Exhibit 1 – AIM's Letter to the Pollacks (hereinafter "April 2021 Letter")]). The letter began: "This letter serves [as] a written notification of [AIM]'s concern regarding your child, A.P., and the next steps that must be taken to help ensure A.P.'s health and well-being as well as the health and well-being of her peers." After setting forth in detail [AIM]'s "Mental Health Concerns" and "Behavioral Concerns" relating to A.P., which included the above-described conduct against her fellow student, the letter continued:

> **Next steps:** There are **2 paths that** we may take. The first addresses the mental health concerns we have for A.P. as a school. The second reflects the community consequences for A.P.'s behavior. Only one path is necessary, although both may occur simultaneously.
>
> **To address mental health concerns:**
> A.P.'s mental health needs supercede [sic] her needs in the classroom. AIM lacks the therapeutic program and personnel to support A.P.'s mental health in a way that would then allow her to access our academic program. Therefore, the school recommends the following:

- Voluntarily withdraw A.P.'s enrollment from [AIM] and engage outside mental health professionals to pursue an alternate program to address the issues outlined above. Outside mental health professionals may recommend some type of therapeutic program.

  - Upon completion of an alternative program, A.P. may reapply to [AIM]. Her enrollment is not guaranteed.

* * *

Additionally, A.P. has demonstrated again and again her inability to accept consequences and follow directions. The school has reached the limits of its ability to control her behavior, A.P. can no longer be a member of the AIM community. **Should the family opt out of addressing A.P.'s mental health per the school's recommendation, A.P. will be expelled from [AIM], effective immediately (April 28, 2021).**

Later the same day, the Pollacks replied by email, stating:

With reference to our meeting this morning, we are withdrawing A.P. from AIM as per your recommendation. We will be following your recommended course of action and get A.P. the help she needs. Once we identify the program we will let you [know] so she can complete her credits for eleventh grade. ([Memorandum of Law in Support of AIM's Motion for Summary Judgment, 7/26/2024, Exhibit 5 (hereinafter "The Pollacks' Response Email")]).

On June 15, 2021, [AIM] withdrew funds from the Pollacks' bank account for "Tuition – Upper School," apparently pursuant to a prior authorization for automatic tuition payment. ([Pollacks'] Ans. To [AIM]'s Mot. for Summ. J., Ex. D). The withdrawal was made even though A.P. was not enrolled in [AIM] for the upcoming 2021-2022 school year.

On August 11, 2021, the Pollacks notified [AIM] that A.P. had successfully completed treatment and wanted to return to the school. [AIM], however, refused to permit A.P. to re[-]enroll. The Pollacks therefore had to find another school that was appropriate for A.P.'s needs for the 2021-2022 school year.

The Pollacks commenced this action against [AIM] on December 9, 2021. On February 8, 2022, they filed an amended complaint. In Count I, they alleged that [AIM] had breached a prior enrollment contract by failing to refund their tuition payment for the 2021-2022 school year. Counts II through IV related to [the April 2021 Letter] and [the Pollacks' Response Email], which the Pollacks characterized as "the April 2021 Contract." Count II alleged that [AIM] breached the April 2021 Contract by failing to give good faith consideration to A.P.'s request for reenrollment. Counts III and IV asserted claims for promissory estoppel and fraudulent inducement, respectively.

On July 26, [2024, AIM] filed its motion for partial summary judgment, seeking dismissal of Counts II through IV. On the same day, the Pollacks filed their own motion for partial summary judgment on Count I. …

Trial Court Opinion, 3/7/2025, at 1-4 (footnotes omitted, formatting modified, emphasis in original). On August 28, 2024, the Pollacks also filed a motion pursuant to local rule 1035.2(a)(4)[1] for entry of judgment on Count I of the

_____

[1] Montgomery County Local Rule of Civil Procedure 1035.2(a), which governs motions for summary judgment, provides, in pertinent part, as follows:

(4) *Timely Filed Briefs*. If the brief of either party is not timely filed, either in accordance with this Rule or by order of the Court, the assigned Judge may:

(a) Dismiss the motion where the moving party has failed to comply,

(b) Grant the requested relief where the respondent has failed to comply, except that no civil action or proceeding

*(Footnote Continued Next Page)*

- 4 -

amended complaint because AIM had failed to file a timely response to their motion for summary judgment on the same count. *See* Motion for Entry of Judgment, 8/28/2024, at 2-3.

On November 19, 2024, the trial court issued orders granting AIM's motion for summary judgment and denying the Pollacks' motion for entry of judgment as moot. In the first order, which granted AIM's motion for summary judgment, the trial court stated that it based its decision to grant summary judgment in favor of AIM because of the Pollacks' failure to file a response to AIM's motion. Trial Court Order (Docket Entry 40), 11/19/2024. The court further stated that "[o]ther pleadings and evidence presented by both [the Pollacks] and [AIM] clearly reveals that [the Pollacks'] child was not guaranteed the right to re[-]enroll in [AIM] following the incident which lead [sic] to her leaving the school." *Id.* n.1. In the second order, which denied the Pollacks' motions for summary judgment and entry of judgment of judgment on Count I as moot,[2] the court stated that "the relief sought in the

_____

shall be dismissed for failure to comply. Nothing precludes the assigned Judge from dismissing the matter on its merits,

(c) List the matter for argument, at which time only the complying party shall be heard.

Montgomery Cnty. L.R.Civ.P. 1035.2(a)(4).

[2] In this order, the trial court stated it was deciding AIM's motion for summary judgment and the Pollacks' motion for entry of judgment. *See* Trial Court Order (Docket Entry 41), 11/19/2024. The trial court referred to AIM's motion
*(Footnote Continued Next Page)*

count, repayment of the tuition paid by [the Pollacks], has been accomplished, as the amount [the Pollacks] paid was refunded with interest." Trial Court Order (Docket Entry 41), 11/19/2024.

On December 11, 2024, the trial court issued two amended orders. The first amended the order granting AIM's motion for summary judgment. Specifically, it corrected the mistake in the original order indicating that the Pollacks had failed to file a response to AIM's motion, as the record clearly reflects the Pollacks responded to AIM's motion for summary judgment. **See** Trial Court Order (Docket Entry 42), 12/11/2024, n.1. The second amended order corrected the order denying the Pollacks' motions for summary judgment and entry of judgment on Count I to clarify that it had intended to rule on both motions in the original order. **See** Trial Court Order (Docket Entry 43), 12/11/2024.

On January 9, 2025, the Pollacks filed a notice of appeal to this Court.[3] They present the following issues for review:

_____

for summary judgment in the order as docket entry 35. **See id.** Docket entry 35, however, is the Pollacks' motion for summary judgment. Based on the trial court's ultimate decision in the order, we presume that the trial court was ruling on both the Pollacks' motions for summary judgment and the entry of judgment on Count I.

[3] AIM argues that this Court should quash this appeal as untimely, asserting that the time for the Pollacks to file their notice of appeal ran from the entry of the November 19, 2024 orders and not the December 11, 2024 amended orders. **See** AIM's Brief at 1-6. AIM contends that amended orders the trial court issued on December 11, 2024 merely corrected clerical or technical
*(Footnote Continued Next Page)*

1. Did the trial court err when it concluded that there were no genuine issues of material fact regarding [the Pollacks'] claim in Count II of the complaint that in April 2021, the parties formed a contract requiring consideration in good faith of [the Pollacks'] child's reapplication to [AIM]?

2. Did the trial court err when, based on its conclusion regarding Count II of the complaint that no contract formed between the parties in April 2021, that there were no genuine issues of material fact regarding [the Pollacks'] claim in Count IV of the complaint that [AIM] fraudulently induced [the Pollacks] to enter into the April 2021 contract?

3. Did the trial court err when it concluded that there were no genuine issues of material fact regarding [the Pollacks'] claim in Count III of the complaint that, assuming arguendo that no contract formed between the parties in April 2021, the doctrine of promissory estoppel applies to avoid injustice?

4. Did the trial court err in denying as moot, rather than granting, [the Pollacks'] motion for partial summary judgment, then prohibiting [the Pollacks] from submitting a motion pursuant to Title 42, section 2503, for the reimbursement of attorney's fees as [a] sanction?

Pollacks' Brief at 6-7 (unnecessary capitalization omitted).

Our standard of review of an order granting a motion for summary judgment is as follows:

---

errors and that the November 19, 2024 were the final appealable orders. ***See id.*** "[A] court upon notice to the parties may modify or rescind any order within 30 days after its entry … if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505. In this case, the trial court amended the November 19, 2024 orders within thirty days of their entry and prior to the Pollacks filing their notice of appeal. The Pollacks then timely appealed from the December 11, 2024 orders. ***See*** Trial Court Opinion, 3/7/2025, at 5; ***see also*** Pa.R.A.P. 903(a) ("the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken). As both the trial court and the Pollacks acted in accordance with section 5505 and Rule 903(a), we decline to quash this appeal as untimely.

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Our scope of review of a trial court's order granting … summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Erie Ins. Exch. v. Eachus*, 306 A.3d 930, 932-33 (Pa. Super. 2023) (citation omitted).

To succeed on a motion for summary judgment, the moving party has the burden to demonstrate the absence of any issue of material fact. *Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 650 (Pa. 2020). The non-moving party has duty to respond to a motion for summary judgment in the trial court. *Harber Phila. Ctr. City Off. Ltd. v. LPCI Ltd. P'ship*, 764 A.2d 1100, 1104 (Pa. Super. 2000); *see also* Pa.R.Civ.P. 1035.3(d) (providing that summary judgment may be entered against a party who does not respond). To survive summary judgment, the non-moving party must identify issues of fact in the record or evidence in the record essential to the cause of action. *See* Pa.R.Civ.P. 1035.3(a). Alternatively, the non-moving party "may supplement the record or set forth the reasons why the party cannot present evidence essential to justify opposition to the motion and any action proposed to be taken by the party to present such evidence." Pa.R.Civ.P. 1035.3(b).

In their first issue, the Pollacks argue that the trial court erred in granting summary judgment on their breach of contract claim. Pollacks' Brief at 24-31. Specifically, the Pollacks contend that genuine issues of material fact exist as to whether the April 2021 Letter and the Pollacks' decision to withdraw A.P. from AIM created a contract and whether AIM breached that contract by refusing to consider A.P.'s readmission to the school in good faith. *Id.* at 29-31. The Pollacks assert that AIM's conduct indicated the existence of a contract because the school withdrew tuition funds from the Pollacks' bank account for the 2021-2022 school year and did not return the money to them until August 2024. *Id.* at 28-29. The Pollacks further assert that both parties benefited from the alleged contract because AIM was "relieved of either the burden of implementing its disciplinary procedures under its Code of Conduct, or the potential liability that can arise from treating a person with disabilities differently and worse than nondisabled peers." *Id.* at 27.

"[T]o successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Rice Drilling B, LLC v. Scott*, 325 A.3d 663, 671 (Pa. Super. 2024) (citation omitted). Our Supreme Court has stated, "generally, in order for a contract to be formed, there must be three requisite elements: an offer, acceptance, and consideration." *Glover v. Junior*, 333 A.3d 323, 339 (Pa. 2025) (quotation marks, brackets, and citation omitted). "An offer

is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ***Somerlot v. Jung***, \_\_\_ A.3d \_\_\_, 2025 WL 2157391, at *6 (Pa. Super. 2025) (citation omitted). "Further, it is well established that the acceptance of any offer … must be unconditional and absolute." ***Yarnall v. Almy***, 703 A.2d 535, 539 (Pa. Super. 1997) (quotation marks and citation omitted). "Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." ***Glover***, 333 A.3d at 339 (citation omitted). "The detriment incurred must be the 'quid pro quo', or the 'price' of the promise, and the inducement for which it was made. Consideration must actually be bargained for as the exchange for the promise." ***Id.*** at 339-40 (citations and some internal quotation marks omitted).

"It is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." ***Discover Bank v. Booker***, 259 A.3d 493, 495-96 (Pa. Super. 2021) (brackets and citation omitted).

> Before a contract can be found, all [the] essential elements of the contract must exist. Therefore, in determining whether an agreement is enforceable, we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed. If all three of these elements exist, the agreement shall be considered valid and binding.

J-S33042-25

***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 516 (Pa.

Super. 1995) (en banc) (citation omitted).

In determining that summary judgment was appropriate on the Pollacks'

breach of contract claim, the trial court explained:

> The evidence of record, viewed in a light most favorable to [the Pollacks], cannot support the existence of a contract between the parties regarding the reenrollment of A.P. following her mental[]health treatment.  Although the Pollacks contend that [the April 2021 Letter] and their reply of the same date constituted an offer and acceptance, the plain language of [AIM]'s letter belies that interpretation.  Nothing in the letter states, implies, or suggests "a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  The letter does not use language of "offer," "proposal," or the like.  To the contrary, the letter is more akin to a demand or even an ultimatum: accept our recommendation that A.P. withdraw from [AIM], or we will expel her.  The interpretation that the letter was proposing any sort of bargain or quid pro quo is simply inconsistent with any reasonable reading of its language.  And, as the [November 19, 2024, order] emphasizes, any doubt whether [AIM] was offering to bind itself is dispelled by the flat statement that even after A.P. has been through the recommended treatment, "her enrollment is not guaranteed."

Trial Court Opinion, 3/7/2025, at 6 (citations and brackets omitted, formatting

modified).

The record supports the trial court's determination.  The record reflects

that in the April 2021 Letter, AIM gave the Pollacks two options: (1) have A.P.

undergo treatment with mental health professionals, and "upon completion"

of that treatment, [A.P.] may reapply to [AIM].  Her enrollment is not

guaranteed[,]" or (2) if the Pollacks chose not to address A.P.'s mental health

issues, A.P. would face expulsion, "effective immediately."  April 2021 Letter

- 11 -

at 3-4 (unnumbered). The language of the April 2021 letter is plain and unambiguous; A.P. was welcome to apply for readmission to AIM, but her enrollment was not guaranteed—the letter did not state or promise anything more. *See id.* Nothing in the April 2021 Letter indicated AIM's willingness to enter into any kind of bargain nor does any aspect of the letter reflect any kind of bargained for exchange; as the trial court correctly found, the letter was more like an ultimatum. *See id.*; *see also* Trial Court Opinion, 3/7/2025, at 6. Likewise, nothing in the letter or the Pollacks' response suggests that a bargained for exchange occurred, i.e., a quid pro quo or consideration. *See* April 2021 Letter at 3-4; *see also* The Pollacks' Response Email. Thus, the April 2021 Letter lacks both an offer and consideration.

We further find the Pollacks' arguments that AIM's behavior was indicative of the existence of a contract because it withdrew tuition from their bank account, and that there was consideration because AIM did not have to enforce its code of conduct against a disabled student, entirely unavailing. With respect to the tuition, both parties acknowledge that the withdrawal of the tuition for the 2021-2022 school year was a mistake that AIM rectified by issuing a complete refund with interest. *See* Pollacks' Brief at 28. Regarding the Pollacks argument relating to consideration, the record is unclear as to the exact nature of A.P.'s disability—the April 2021 Letter, however, is clear that AIM would expel her not because of any disability, but because of her actions, including inappropriate "use of technology," "[h]arassment and intimidation

using technology," the failure to respect authority, "[b]ullying," and "[c]yberbullying[.]" **See** April 2021 Letter at 4.

Based on the foregoing, the trial court did not err in concluding that the undisputed material facts reveal that no contract existed between AIM and the Pollacks, that the Pollacks could not sustain a cause of action for breach of contract, and that AIM was entitled to judgment as a matter of law on this claim. The trial court therefore did not err granting AIM's motion for summary judgment on the Pollacks' breach of contract claim.

In their second issue, the Pollacks argue that the trial court erred in granting summary judgment on their fraud in the inducement claim. Pollacks' Brief at 31-34. Although their argument lacks clarity, the Pollacks appear to assert that genuine issues of material fact exist as to whether AIM made false representations to the Pollacks that induced them to agree to the alleged contract created by the April 2021 Letter. **See id.** Put another way, the Pollacks contend that AIM lied to them about whether it would give good faith consideration of A.P.'s reapplication to the school, were she to undergo mental health treatment, to induce them into withdrawing A.P. from AIM so that AIM would not have to expel her. **See id.**

Fraudulent misrepresentation or fraud in the inducement of a contract occurs where "an opposing party made false representations that induced the complaining party to agree to the contract." **Toy v. Metro. Life Ins. Co.**,

928 A.2d 186, 205 (Pa. 2007) (citation omitted). A claim of fraud in the inducement requires a plaintiff to prove:

> (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance.

**Gregg v. Ameriprise Fin., Inc.**, 245 A.3d 637, 645-46 (Pa. 2021). Additionally, an assertion of fraud "shall be averred with particularity." Pa.R.Civ.P. 1019(b). We have explained that Rule 1019(b) is intended "to protect those against whom generalized and unsupported fraud may be levied." **Presbyterian Med. Ctr. v. Budd**, 832 A.2d 1066, 1072 (Pa. Super. 2003) (citations omitted). Averments of fraud may be "meaningless epithets unless sufficient facts are set forth." **Id.**

The trial court granted summary judgment on the Pollacks' fraud in the inducement claim because "[t]here was no contract into which the Pollacks could have been induced" and "there is no evidence that [AIM] acted with fraudulent intent." Trial Court Opinion, 3/7/2025, at 7. As set forth above, the record supports the trial court's determination that the April 2021 Letter did not create a contract between AIM and the Pollacks, and on this basis alone, the Pollacks' fraud in the inducement claim fails. **See Gregg**, 245 A.3d at 645-46

Moreover, to the extent the Pollacks are asserting, similar to their first issue, that AIM fraudulently induced them into withdrawing A.P. from the

- 14 -

school to undergo mental health treatment so that AIM did not have to expel her, the record reveals that AIM would have been well within its rights to expel A.P. The AIM Community Handbook sets forth several prohibited behaviors, including, inter alia, hazing, bullying, derogatory name-calling, ridicule or humiliation, and cyberbullying. *See* The Pollacks' Motion for Partial Summary Judgment, 7/26/2024, Exhibit C – AIM Community Handbook (hereinafter "AIM Handbook") at 24-26. The AIM Handbook further states that disciplinary action for such behavior can include "expulsion." *Id.* at 31. Thus, the Pollacks' understood AIM could have expelled A.P. if it so chose and there is nothing in the record that indicates that AIM fraudulently induced them to withdraw A.P. from the school as opposed to expelling her. *See id.* Likewise, to the extent the Pollacks' assert injury based on AIM's withdrawal of tuition from their bank account, we reiterate that AIM returned those funds with interest.

Accordingly, the trial court did not err in concluding that the undisputed material facts reveal that AIM did not fraudulently induce the Pollacks to enter into a contract, the Pollacks could not sustain a cause of action for fraudulent misrepresentation, and AIM was entitled to judgment as a matter of law on this claim. The trial court therefore did not err by granting AIM's motion for summary judgment on the Pollacks' fraud in the inducement claim.

In their third issue, the Pollacks argue that the trial court erred in granting summary judgment on their promissory estoppel claim. Pollacks' Brief at 34-37. They assert that the trial court erred in concluding that the

April 2021 Letter "did not involve a 'contract-like promise'" and that "the record establishes a genuine dispute of material fact regarding whether the equitable doctrine of promissory estoppel should apply to make [AIM]'s offer of good-faith consideration of [A.P.]'s re-application enforceable." *Id.* at 35.

"[T]he doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his own position to his own detriment." *Erie Ins. Exch. v. United Servs. Auto. Ass'n*, 307 A.3d 1221, 1225 (Pa. Super. 2023) (en banc) (quotation marks and citations omitted). A claim of promissory estoppel requires the plaintiff to plead and prove that: "(1) the promisor made a promise that he should have reasonably expected to induce an action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can only be avoided by enforcing the promise." *Id.* (citation omitted).

The trial court granted summary judgment on the Pollacks' promissory estoppel claim because the April 2021 Letter "did not make any 'contract-like promise' or, indeed, any promise, other than a promise to expel A.P. if her parents did not withdraw her." Trial Court Opinion, 3/7/2025, at 7. As discussed at length above, the record supports the trial court's determination that the April 2021 Letter did not make any kind of promise to the Pollacks upon which they relied to their detriment. The letter could not have been

more clear: the Pollacks could withdraw A.P. or AIM was going to expel her. *See* April 2021 Letter at 3-4. The letter further made clear that while A.P. was welcome to apply for readmission at AIM following her withdrawal and upon completing a mental health treatment program, "[h]er enrollment is not guaranteed." *Id.*

Based on the foregoing, the trial court did not err in concluding that the undisputed material facts show that AIM made no promise to the Pollacks in any way regarding its consideration of A.P.'s readmission to the school, the Pollacks could not sustain a cause of action for promissory estoppel, and AIM was entitled to judgment as a matter of law on this claim. The trial court therefore did not err granting AIM's motion for summary judgment on the Pollacks' promissory estoppel claim.

In their final issue, the Pollacks argue that the trial court erred in finding moot their claim for the return of the tuition AIM wrongly withdrew from the bank account for the 2021-2022 school year. Pollacks' Brief at 37. Additionally, the Pollacks' baldly assert that the trial court wrongly precluded them from pursuing counsel fees under 42 Pa.C.S. § 2503(7).[4] Pollack's Brief at 37-38.

---

[4] Section 2503 provides, in relevant part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

*(Footnote Continued Next Page)*

"[O]ur courts cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given." ***Sayler v. Skutches***, 40 A.3d 135, 143 (Pa. Super. 2012) (citation omitted). "As a general rule, an actual case or controversy must exist at every stage of the judicial process[.]" ***Id.*** (citation omitted).

> An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.
>
> Nevertheless, this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

***Lico, Inc. v. Dougal***, 216 A.3d 1129, 1132 (Pa. Super. 2019) (citation and brackets omitted).

Both parties acknowledge that the withdrawal of the tuition for the 2021-2022 was a mistake that AIM rectified by refunding it, in whole, with interest. ***See*** Pollacks' Brief at 28. We therefore discern no error in the trial

---

\*    \*    \*

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S. § 2503(7).

- 18 -

court's determination that the Pollacks' claim regarding tuition was moot, as there is no controversy that exists relating to the tuition, and the Pollacks do not assert any exceptions to the mootness doctrine. *See Dougal*, 216 A.3d at 1132.

With respect to the Pollacks' claim regarding counsel fees, this Court has held that "a trial court may consider a petition for fees filed within 30 days of the entry of final judgment." *In re Estate of Bechtel*, 92 A.3d 833, 843 (Pa. Super. 2014). In this case, the Pollacks' never filed a petition for counsel fees, making any such request at this point untimely. *See id.* As the Pollacks failed to raise this issue before the trial court, they have waived it for purposes of appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Additionally, we emphasize that the Pollacks fail to point to anything in the record, and our review of the record reveals nothing, that supports their bald assertion that the trial court somehow prevented them from filing a petition for counsel fees. *See* Pollacks' Brief at 37-38. We therefore conclude that the Pollacks' final issue fails.

Based on the foregoing, the trial court did not err in determining that there were no genuine issue of material facts and that AIM was entitled to judgment as a matter of law on the Pollacks' breach of contract, fraud in the inducement, and promissory estoppel claims. As the Pollacks otherwise failed

to raise any issues that entitle them to relief, we affirm the trial court's December 11, 2024 orders.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025